## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| **ROBERT C. MCCHESNEY, in his official capacity as Treasurer of Bart McLeay for U.S. Senate, Inc.; and  BART MCLEAY FOR U.S. SENATE, INC.,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**MATTHEW S. PETERSON, in his official capacity as Chair of the Federal Election Commission;  FEDERAL ELECTION COMMISSION; and UNITED STATES OF AMERICA,**<br><br>**Defendants.** | **8:16CV168**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the Motions to Dismiss filed by Defendants Federal Election Commission (the "Commission") and Matthew S. Peterson ("Peterson"), ECF No. 21, and the United States of America, ECF No. 25. Plaintiffs have moved to dismiss their claims against the United States without prejudice. Accordingly, their Notice of Dismissal, ECF No. 28, will be approved and Defendant United States of America will be dismissed. For the reasons stated below, the Motion filed by the Commission and Peterson will be granted.

### BACKGROUND

Because this case turns on the Commission's interpretation of federal administrative and election law, a discussion of the statutory and regulatory scheme involved is helpful to an understanding the nature of Plaintiffs' claims. The Court will also summarize the promulgation and administration of the relevant fine program at

issue. Finally, the Court will provide background regarding how the statutes, regulations, and fine program were applied to Plaintiffs.

## I. FECA and its Enforcement

### a. The Commission and FECA Enforcement in General

The Commission is an independent agency of the United States government with exclusive jurisdiction over civil enforcement of the Federal Election Campaign Act of 1971, as amended, 52 U.S.C. § 30101, *et seq.* ("FECA"). *See* 52 U.S.C. §§ 30106(b)(1), 30107(a), 30109. The Commission is composed of six Commissioners, including Defendant Petersen, who currently serves as Chairman. Under FECA, if at least four Commissioners find "reason to believe" that a FECA violation has occurred, the Commission's General Counsel may conduct an investigation, leading to a recommendation as to whether there is "probable cause to believe" a violation has occurred. 52 U.S.C. § 30109(a)(1)-(3). If at least four Commissioners then find probable cause exists, the Commission must attempt to resolve the matter by "informal methods of conference, conciliation, and persuasion, and to enter into a conciliation agreement" with the respondent. 52 U.S.C. § 30109(a)(4)(A)(i). If the Commission is unable to resolve the matter through voluntary conciliation, the Commission may file a *de novo* civil suit to enforce the Act in federal district court. 52 U.S.C. § 30109(a)(6).

### b. Political Committees and "48 Hour" Disclosure Reports

FECA requires political committees to designate a treasurer to maintain the committee's financial records. *See* 52 U.S.C. § 30102(a)-(d). The term "political committees" as used in FECA, includes candidate campaigns, political parties, and other political organizations. S*ee* 52 U.S.C. § 30101(4)-(6). Under FECA, the treasurer

2

must sign and file periodic reports on behalf of the political committee, including reports regarding the committee's receipts and disbursements.   52 U.S.C. § 30104(a)-(b). These reports must be filed in compliance with the schedule established in FECA and its implementing regulations. *See* 52 U.S.C. § 3010411(a)(11), (b); 11 C.F.R. § 104.14(d). Reports for the principal campaign committee of a candidate for the office of U.S. Senator must be filed with the Secretary of the Senate. 52 U.S.C. § 30102(g); 11 C.F.R. § 105.2.

Section 30104(a)(6)(A) requires principal campaign committees to report in writing any contribution of $1,000 or more received by the committee after the 20th day, but more than 48 hours before, any election. Such notifications "shall be made within 48 hours after the receipt of such contribution and shall include the name of the candidate and the office sought by the candidate, the identification of the contributor, and the date of receipt and amount of the contribution." 52 U.S.C. § 30104(a)(6)(A).

### c. The Administrative Fines Program

In 1999, Congress amended FECA to create an enforcement system for violations of the periodic filing requirements. *See* Treasury Postal Serv. and General Government Appropriations Act, 2000, Pub. L. No. 106-58, § 640, 113 Stat. 430, 476-477 (1999) (codified at 52 U.S.C. § 30109(a)(4)(C)). Congress authorized the Commission to directly assess civil money penalties for violations of 52 U.S.C. § 30104(a), including violations of the deadlines for political committees' disclosure reports. Pursuant to this authority, after the Commission finds reason to believe a political committee and its treasurer have failed to file a report within the established deadlines, the Commission may:

3

> require the person to pay a civil money penalty in an amount determined under a schedule of penalties which is established and published by the Commission and which takes into account the amount of the violation involved, the existence of previous violations by the person, and such other factors as the Commission considers appropriate.

52 U.S.C. § 30109(a)(4)(C)(i)(II). A respondent who objects to the Commission's imposition of an administrative fine may seek judicial review of the Commission's determination in federal district court "by filing in such court . . . a written petition requesting that the determination be modified or set aside." 52 U.S.C. § 30109(a)(4)(C)(iii).

In 2000, the Commission promulgated regulations establishing the procedures that apply to administrative fine matters and the schedules of penalties authorized by 52 U.S.C. § 30109(a)(4)(C)(i)(II). *See* Administrative Fines, 65 Fed. Reg. 31,787 (May 19, 2000) ("May 2000 Administrative Fines Rule"); 11 C.F.R. §§ 111.43(a)-(c), 111.44. These civil penalty schedules contained factors to consider when assessing a penalty, including whether the untimely report was election sensitive, how late it was filed, the dollar amount of the receipts and disbursements involved, and the number of prior violations by the respondent. *See* 11 C.F.R. § 111.43(a)-(c). The regulation formulas established specific penalties for 48-hour notices. 11 C.F.R. § 111.44(a)(1). Under § 111.44(a)(1) the current civil penalty for each untimely 48-hour notice is $137 plus ten percent of the "amount of the contribution(s) not timely reported."

When the Commission determines that it has "reason to believe" that a respondent has violated 52 U.S.C. § 30104(a), the Commission notifies the respondent of the Commission's finding, including the proposed civil money penalty. 11 C.F.R. § 111.32. Upon receipt of this notification, the respondent may either pay the penalty, 11

4

C.F.R. §§ 111.33-111.34, or challenge the finding and/or the penalty by filing a written response within 40 days of the date of the Commission's finding. 11 C.F.R. § 111.35(a), (e). The written response must assert one of three possible grounds for such a challenge: (1) factual errors in the Commission's finding; (2) inaccurate calculation of the penalty; or (3) a showing that the respondent used "best efforts" to file in a timely manner but was prevented from doing so by "reasonably unforeseen circumstances . . . beyond the respondent's control," and the respondent filed the report no later than 24 hours after such circumstances ended. 11 C.F.R. § 111.35(b)(1)-(3).

Timely filed responses challenging the Commission's reason-to-believe finding are reviewed by a Commission "Reviewing Officer." 11 C.F.R. § 111.36(a). The Reviewing Officer submits a written recommendation to the Commission, that is also provided to the respondent. 11 C.F.R. § 111.36(e), (f). The respondent may file a written response to the recommendation within ten days, but generally may not raise new arguments beyond those in the original written response. 11 C.F.R. § 111.35(f).

After receiving the Reviewing Officer's recommendation and any timely additional response from the respondents, the FEC makes a final determination by an affirmative vote of at least four Commissioners as to whether the respondent violated 52 U.S.C. § 30104(a), and, if so, the amount of the civil penalty. 11 C.F.R. § 111.37. The reasons provided by the Reviewing Officer for the recommendation serve as the reasons for the Commission's action, unless otherwise indicated by the Commission. 11 C.F.R. § 111.37(d).

The respondent then has 30 days in which to petition for the judicial review authorized by 52 U.S.C. § 30109(a)(4)(C)(iii).  Judicial review is limited to the issues

and facts raised before the Commission during the administrative proceeding. 11 C.F.R. § 111.38.

### d. Modifications to the Administrative Fines Program

The amendments to FECA in 1999 that created the Administrative Fines Program initially applied to violations occurring between January 1, 2000, and December 31, 2001. Extension of Administrative Fines Program, 79 Fed. Reg. 3302-01 (Jan. 21, 2014) (to be codified at 11 C.F.R. Part 111). Congress later extended the Commission's statutory authority for the Administrative Fines Program several times, including, most recently, in December 2013.  In December 2013, Congress extended the Administrative Fines Program through December 31, 2018. *See* Act of Dec. 26, 2013, Pub. L. No. 113–72, § 1 (referred to herein as the "2013 Congressional Extension"). Relevant to this case, the civil penalty formula under the Administrative Fines Program for untimely 48-hour notices was first established in May 2000. Administrative Fines, 65 Fed. Reg. 31,787 (Friday, May 19, 2000).  The civil penalty formula has been adjusted once, in 2005, to its current amount. *See* Inflation Adjustments for Civil Monetary Penalties, 70 Fed. Reg. 34633, 34636 (June 15, 2005) ("June 2005 Inflation Adjustment") (adjusting civil penalty formula for 48-Hour Notices that are not timely filed as "$110 + (.10 x amount of the contribution(s) not timely reported")).

Before the 2013 Congressional Extension, the Commission's regulations implementing the Administrative Fines Program, 11 C.F.R. § 111.30, specified the end date of the program. Each time Congress has extended the statute that authorizes the Administrative Fines Program, the Commission revised the end date in § 111.30.

However, in response to the 2013 Congressional Extension, the Commission revised §
111.30 to state that the Administrative Fines Program applied to reporting periods that
"end on or before the date specified in 2 U.S.C. § 437g(a)(4)(C)(v)." *See* Extension of
Administrative Fines Program, 79 Fed. Reg. 3,302-01 (January 21, 2014) (referred to
herein as the "2014 Regulatory Extension"). The Commission also deleted 11 C.F.R. §
111.41, an administrative provision requiring that fines be paid by check or money
order. *Id.* These were the only changes made to the implementing regulations in the
2014 Regulatory Extension.

Because the Commission made changes to the regulations without notice or
opportunity to comment, it provided an explanation of its reasoning contemporaneous
with the changes to the regulations.  In its explanation, the Commission first noted that
because Congress did not enact the most recent statutory extension until December
2013, "there [was] a short gap between the end date of the Commission's current
regulations and the effective date of this final rule on January 21, 2014." *Id.* The
Commission directed that "[r]eports covering reporting periods that end during this gap
are not subject to the [Administrative Fines Program]; they are instead subject to the
Commission's enforcement procedures set forth at 11 CFR part 111, subpart A." *Id.*
(citing 11 CFR 111.31(a)).

The Commission further explained that it implemented the 2014 Regulatory
Extension of the Administrative Fines Program "without advance notice or an
opportunity for comment because [the extension] falls under the 'good cause' exemption
of the Administrative Procedure Act." *Id.* (citing 5 U.S.C. § 553(b)(B)) (permitting
agencies to dispense with the notice and comment period when "impracticable,

unnecessary, or contrary to the public interest."). The Commission concluded that its action fell within the good cause exception because "this final rule merely extends the applicability of the existing [Administrative Fines Program] and deletes one administrative provision; the final rule makes no substantive changes to the [Administrative Fines Program]." *Id.* The Commission further explained that the 2014 Regulatory Extension "[fell] within the 'good cause' exception to the delayed effective date provisions of the Administrative Procedure Act and the Congressional Review Act." *Id.* Thus, the Commission concluded that the final rule "[would be] effective upon publication in the Federal Register." *Id.* (citing 5 U.S.C. §§ 553(d), 808(2)).

## II.  Challenge in This Case

Plaintiff McLeay Committee is the principal campaign committee of Bartholomew L. McLeay, who was a candidate in the United States Senate primary election in Nebraska on May 13, 2014. ECF No. 1, Compl. ¶ 2; Page ID 1. Plaintiff Robert C. McChesney was the Treasurer of the McLeay Committee. *Id.* ¶¶ 1, 2; Page ID 1-2.

In connection with that election, Plaintiffs were required to file 48-hour notices for contributions and loans of $1,000 or more received between April 24 and May 10, 2014. 52 U.S.C. § 30104(a)(6)(A); 11 C.F.R. § 104.5(f). On June 29, 2015, the Commission notified Plaintiffs that the Commission had reason to believe that Plaintiffs violated FECA by failing to file 48-hour reports for several contributions. Compl. ¶ 29, Page ID 11; ECF No. 21-3, Page ID 82. Specifically, the Commission alleged that Plaintiffs did not timely file 48-hour notices for fourteen contributions received between April 24 and May 9, 2014, totaling $112,425.06. Compl. ¶ 29, Page ID 11; ECF No. 21-3, Page ID 82, 86. In its notification, the Commission made a preliminary determination that a civil

8

penalty of $12,122 should be assessed for such violations, based on the penalty formula set forth at 11 C.F.R. § 111.44. ECF No. 21-3, Page ID 82. The Commission's notice designated the penalty as an Administrative Fine ("AF"). Compl. ¶ 29, Page ID 11; ECF No. 21-3, Page ID 82.

On July 31, 2015, Plaintiffs provided written responses to the Commission, asserting that the proposed civil penalty was not based on an authorized schedule of penalties lawfully established by the Commission. Therefore, according to Plaintiffs, the 48-hour notice reporting requirements did not apply to the candidate loans at issue, and an alternative method of calculating the proposed civil penalty would have been preferable. Compl. ¶ 30, Page ID 11-12; *see also* ECF No. 21-4, Page ID 87-95.

The Commission's Reviewing Officer, Rhiannon Magruder ("Magruder"), reviewed Plaintiffs' responses and made her recommendation to the Commission on September 29, 2015. Compl. ¶ 30, Page ID 11-12; *see also* ECF No. 21-4, Page ID 87-95. Magruder concluded that Plaintiffs failed to comply with eight separate 48-hour notice deadlines and the candidate's unreported loans were appropriately included in calculating Plaintiffs' civil penalty. ECF No. 21-5, Page ID 97-101. She further concluded that the Commission's preliminary civil penalty calculation of $12,122 was correct, and that Plaintiffs failed to challenge the Commission's reason-to-believe determination and preliminary civil penalty calculation on the basis of any of the permissible grounds identified in the Commission's regulations. *Id.* (citing 11 C.F.R. § 111.35(b)). Magruder therefore recommended a final determination of Plaintiffs' reporting violation and assessment of civil penalty. ECF No. 21-5, Page ID 101.

On October 9, 2015, Plaintiffs filed a response and reiterated, among other things, Plaintiffs' view that the schedule of penalties at 11 C.F.R. § 111.44 had not been "lawfully established by the Commission."   Compl. ¶ 32, Page ID 12; ECF No. 21-7, Page ID 130.

On March 21, 2016, the Commission adopted the Reviewing Officer's Final Determination Recommendation, and concluded that Plaintiffs failed to demonstrate that a factual error had been made in the reason-to-believe finding, that the penalty was miscalculated, or that they used best efforts to file on time. Compl. ¶ 33, Page ID 12; ECF No. 21-8, Page ID 177-78, 181-83. The Commission also concluded, based on guidance from the Commission's Office of General Counsel incorporated by reference in the Final Determination Recommendation, that the schedule of penalties was lawfully established. ECF No. 21-8, Page ID 178, 186-89. The Commission thus made a final determination that plaintiffs violated 52 U.S.C. § 30104(a) and assessed a $12,122 civil penalty. Compl. ¶ 33, Page ID 12; ECF No. 21-8, Page ID 177-78.

Plaintiffs allege that the Commission could not impose the monetary fine because the Commission failed to establish a valid penalties schedule. According to Plaintiffs, the determinative issue in this action is whether the Commission "established" the penalties schedule in accordance with the law in order to have the legal authority to impose the fines it assessed on Plaintiffs.

## STANDARDS OF REVIEW

### I.  Federal Rule of Civil Procedure 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."   Fed. R. Civ. P. 8(a)(2).  To satisfy this requirement, a

plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Inv'rs Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Barton v. Taber,* 820 F.3d 958, 964 (8th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Zink v. Lombardi*, 783 F.3d 1089, 1098 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 135 S. Ct. 2941 (2015). The complaint's factual allegations must be "sufficient to 'raise a right to relief above the speculative level.'" *McDonough v. Anoka Cty.*, 799 F.3d 931, 946 (8th Cir. 2015) (quoting *Twombly*, 550 U.S. at 555). The Court must accept factual allegations as true, but it is not required to accept any "legal conclusion couched as a factual allegation." *Brown v. Green Tree Servicing LLC*, 820 F.3d 371, 373 (8th Cir. 2016) (quoting *Twombly*, 550 U.S. at 555). Thus, "a pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Ash v. Anderson Merchandisers, LLC*, 799 F.3d 957, 960 (8th Cir. 2015) (quoting *Iqbal*, 556 U.S. at 678), *cert. denied*, 136 S. Ct. 804 (2016).

On a motion to dismiss,[1] courts must rule "on the assumption that all the allegations in the complaint are true," and "a well-pleaded complaint may proceed even

---

[1] Both parties submitted matters outside the pleadings in support of their positions. The Commission produced correspondence regarding its decision to fine Plaintiffs. Although the Court has considered this correspondence between the parties, the letters were expressly referenced in the Complaint and thus are not "matters outside the pleading" such that the Court must convert this Motion

if it strikes a savvy judge that actual proof of those facts is improbable, and "'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 555-56 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "Determining whether a complaint states a plausible claim for relief…[is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Mickelson v. Cty. of Ramsey*, 823 F.3d 918, 923 (8th Cir. 2016) (alternation in original) (quoting *Iqbal*, 556 U.S. at 678).

## II. Review of Final Agency Decision

Plaintiffs characterize this action as an "administrative appeal of a federal agency action." ECF No. 27, Pl. Br., Page ID 211. A court may review a final federal agency action, decision, or conclusion under the Federal Administrative Procedures Act ("APA"), 5 U.S.C. § 706(2). Under the APA, a reviewing court can set aside an agency decision where the agency action was arbitrary or capricious, an abuse of discretion, not in accordance with the law, or in excess of statutory authority. § 706(2). "To make this finding the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). Agency decisions are given a "high degree of deference." *Sierra Club v. EPA,* 252 F.3d 943, 947 (8th Cir. 2001). "The

---

into one for summary judgment. *See Gorog v. Best Buy Co.*, 760 F.3d 787, 791 (8th Cir. 2014) ("Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.") (citations omitted). Plaintiffs submitted evidence of emails between the parties regarding whether the Commission was legally obligated to submit the entire Administrative Record ("AR") in support of its Motion. The Court has not considered this evidence because it merely contains the legal arguments asserted by each party in support of their respective positions. Accordingly, the Court does not convert this Motion into one for summary judgment.

court is not empowered to substitute its judgment for that of the agency." *Overton Park,* at 416.

Because the Court is reviewing agency action in this case, the Court "sits as an appellate tribunal, not as a court authorized to determine in a trial-type proceeding whether the Secretary's study was factually flawed." *Marshall County Health Care Auth. v. Shalala,* 988 F.2d 1221, 1225 (8th Cir. 1993). "The entire case on review is a question of law, and only a question of law. And because a court can fully resolve any purely legal question on a motion to dismiss, there is no inherent barrier to reaching the merits at the 12(b)(6) stage." *Id.* at 1226.

## DISCUSSION

### I. Jurisdiction Over Plaintiffs' Claims

#### a. First Claim: Declaratory Judgment Act

As a threshold matter, the Commission challenges the Court's subject matter jurisdiction over Plaintiffs' First and Second Claims for Relief, arising under the Declaratory Judgment Act, 28 U.S.C. § 2201, and the APA, respectively. The Commission argues that Plaintiffs lack standing to seek a declaratory judgment.

Plaintiffs seek a declaratory judgment stating that the Commission had not lawfully established a penalties schedule through the 2014 Regulatory Extension at the time penalties were assessed against Plaintiffs. ECF No. 1, Compl., ¶ 41, Page ID 15. In other words, Plaintiffs seek a declaration that the assessment of penalties must be modified or set aside. Review under the APA is precluded where Congress has otherwise provided a "special and adequate review procedure." *Bowen v. Massachusetts,* 487 U.S. 879, 904 (1988); *see also* 5 U.S.C. § 704. As noted in the

13

Complaint and in Plaintiffs' brief, FECA provides its own framework for judicial review of agency action. *See* 52 U.S.C. § 30109(a)(4)(C)(iii). FECA grants the FEC "exclusive jurisdiction" over civil enforcement of campaign finance laws, thereby channeling all complaints of campaign finance violations through the FEC. 52 U.S.C. § 30106(b). Plaintiffs have not identified any reason that review under FECA presents an inadequate remedy. Accordingly, Plaintiffs' claim for declaratory relief must be denied.

### b.  Second Claim: Injunction Under the APA

In their Second Claim for Relief, Plaintiffs assert that the penalties assessed against them were not in accordance with law and were in excess of the Commission's statutory authority.   ECF No. 1, Compl., ¶¶ 46-47, Page ID 16-17. As a remedy, Plaintiffs seek injunctive relief under the APA, 5 U.S.C. § 706(2). However, "Congress did not intend the general grant of review in the APA to duplicate existing procedures for review of agency action." *Bowen,* 487 U.S. at 903. As noted above, Congress granted the Commission exclusive jurisdiction over civil enforcement of campaign finance laws. For this reason, other courts have held that "FECA itself indicates that the remedy it provides is sufficient to preclude APA review of the Commissioners' statements of reasons." *Citizens for Responsibility & Ethics in Washington v. Fed. Election Comm'n*, 164 F. Supp. 3d 113, 119 (D.D.C. 2015). Because FECA provides an adequate remedy, Plaintiffs' Second Claim for Relief must also be dismissed.

### c.  Permissible Grounds for Review under FECA

Although the Parties agree that the Court has subject matter jurisdiction over Plaintiffs' Third Claim for Relief under FECA, 52 U.S.C. § 30109(a)(4)(C)(iii), the Commission asserts that Plaintiffs failed to properly challenge the Commission's

14

administrative fines decision. Specifically, the Commission alleges that Plaintiffs may only challenge the AF on three permissible grounds: that the Commission's finding was based on a factual error; that the Commission improperly calculated the civil penalty; or that respondents used "best efforts," as defined in FEC regulations, to file in a timely manner. *See* 11 C.F.R. § 111.35(b). Section 111.35 governs challenges to the Commission's "reason to believe" finding. Section 111.35(b) states:

> The respondent's written response must assert at least one of the following grounds for challenging the reason to believe finding or proposed civil money penalty:
>
> (1) The Commission's reason to believe finding is based on a factual error including, but not limited to, the committee was not required to file the report, or the committee timely filed the report in accordance with 11 C.F.R. § 100.19;
>
> (2) The Commission improperly calculated the civil money penalty; or
>
> (3) The respondent used best efforts to file in a timely manner in that:
>
>> (i) The respondent was prevented from filing in a timely manner by reasonably unforeseen circumstances that were beyond the control of the respondent; and
>>
>> (ii) The respondent filed no later than 24 hours after the end of these circumstances.

Plaintiffs argue that § 111.35(b) is not as limited as it appears on its face because its authorizing statute, 52 U.S.C. § 30109, does not limit available defenses. Specifically, Plaintiffs argue that § 30109(a)(2) and (3) permits respondents to assert defenses arising out of any "legal and factual issues." Plaintiffs assert that because § 30109(b) does not directly limit its defenses, § 111.35 cannot be read to limit Plaintiffs' available defenses.

The Court concludes that, regardless of whether § 111.35 validly limits Plaintiffs' defenses, for purposes of proceeding in this case, Plaintiffs have satisfied the requirements of § 111.35(b). As noted above, § 111.35(b)(1) provides that respondents must allege "at least one of the … grounds" listed in the regulation, which includes a claim the Commission's "finding is based on a factual error" (11 C.F.R. § 111.35(b)(1)). Plaintiffs' response to the Commission included the assertion that the factual basis for the Commission's conclusion was in error.  *See* ECF No. 21-7, Page ID 139 ("For the reasons shown below, these facts conclusively prove the civil monetary penalty . . . must be vacated and stricken"); *see also* ECF No. 21-4, Page ID 89 ("[Plaintiffs] challenge . . . the proposed civil money penalty. . . on the . . . basis of 'actual error' and 'miscalculation of the calculated civil money penalty' . . .").  Although Plaintiffs do not directly pursue those grounds in this case, their response to the Commission can reasonably be read to assert an objection on the basis of factual error. Section 111.35(b)(1) does not require the listed items to be the only grounds asserted in defense. Rather, it requires that one of the listed grounds be asserted before other grounds can be considered. Plaintiffs have satisfied that condition for purposes of the Commission's action.

## II.  Legality of the 2014 Regulatory Extension

### a.  Sufficiency of the Record

Prior to considering the merits of Plaintiffs' claim under FECA, the Court must address whether the administrative record ("AR") is sufficient for review. "On a motion to dismiss, a court must primarily consider the allegations contained in the complaint, although matters of public and administrative record referenced in the complaint may

16

also be taken into account." *Deerbrook Pavilion, LLC v. Shalala*, 235 F.3d 1100, 1102 (8th Cir. 2000) (citing *Jackson v. City of Columbus,* 194 F.3d 737, 745 (6th Cir.1999)). Plaintiffs argue that the Commission's Motion should be denied because the Commission submitted only portions of the AR. In support of their Motion, the Commission submitted correspondence between the parties that was a part of the AR and expressly referenced in the Complaint. The Complaint also references matters that are, according to the Commission, part of the public record. Thus, following the Eighth Circuit's reasoning in *Deerbrook*, the Commission has submitted and/or identified "matters of public and administrative record referenced in the Complaint." *Id.* at 1102.

Plaintiffs nevertheless argue that the Commission was required to submit the entire record, and that the Commission's Motion must be denied because only a portion of the AR has been submitted. Plaintiffs cite *Portland Audubon Soc. v. Endangered Species Comm.*, 984 F.2d 1534 (9th Cir. 1993) which states, "Section 706 of the APA provides that judicial review of agency action shall be based on 'the whole record.'" *Id.* at 1548. Plaintiffs' reliance on that case is incomplete. Section 706 requires that, when reviewing agency action, "the court shall review the whole record *or those parts of it cited by a party*, and due account shall be taken of the rule of prejudicial error." 5 U.S.C. § 706 (emphasis added). The Commission has submitted those parts of the AR cited by the Plaintiffs, and has directed the Court to other publicly available documents cited in the Complaint. Accordingly, for purposes of the arguments set forth in the Commission's Motion, the AR before the Court is sufficient for review.

### b. Penalty Formula Applied to Plaintiffs

Plaintiffs' principal argument, both at the administrative level and before the Court on review, is that the Commission failed to establish the applicable penalty schedule in accordance with Commission regulations and the APA. Plaintiffs argue that the Commission promulgated the 2014 Regulatory Extension of the Administrative Fines Program without proper notice. The Commission argues that the extension of the Administrative Fines Program fell within the "good cause" exemptions of 5 U.S.C. § 553, and notice and publication were excused.

"Agencies must conduct 'rule making' in accord with the APA's notice and comment procedures." *Iowa League of Cities v. EPA,* 711 F.3d 844, 855 (8th Cir. 2013) (citing 5 U.S.C. § 553(b),(c)). Generally, "[t]he APA's rulemaking provisions require three steps to enact substantive rules: notice of the proposed rule, a hearing or receipt and consideration of public comments, and the publication of the new rule." *United States v. Brewer*, 766 F.3d 884, 888 (8th Cir. 2014) (quoting *United States v. DeLeon,* 330 F.3d 1033, 1036 (8th Cir. 2003). "The third step, publication of a new substantive rule, must be completed 'not less than 30 days before [the rule's] effective date.'" *Id.* (quoting 5 U.S.C. § 553(d)).

"An agency may waive the requirements of a notice and comment period and the 30-day grace period before publication if the agency finds 'good cause' to do so." *Id.* (citing 5 U.S.C. § 553(b)(B), (d)(3)). The Eighth Circuit has cautioned courts to distinguish between the pre-adoption notice and comment requirements in § 553(b) and the separate post-adoption publication requirements, listed in § 553(d). *See Brewer*, 766 F.3d at 888. "Because these are separate requirements, the agency must have good cause to waive each." *Id.* The Commission has the burden of demonstrating good

18

cause. *See Northern Arapahoe Tribe v. Hodel,* 808 F.2d 741 (10th Cir. 1987); *Buschmann v. Schweiker,* 676 F.2d 352, 347 (9th Cir. 1982). *Cf. United States v. Gavrilovic,* 551 F.2d 1099, 1105 (8th Cir. 1977) ("Congress intended to impose upon an administrative agency the burden [under § 553(d)(3)] of showing a public necessity.") The Court reviews whether the Commission has met its burden of showing good cause under each exception.

### i. Pre-adoption Good Cause Under § 553(b)

Circuits are split as to the standard of review for an agency's assertion of good cause under § 553(b)(B). The Fourth and Sixth Circuits appear to apply a de novo review. *See United States v. Gould,* 568 F.3d 459, 469–70 (4th Cir. 2009); *United States v. Cain,* 583 F.3d 408, 420–21 (6th Cir. 2009)). The Eighth Circuit, however, has "deferred to the agency's determination" in the past, and "reviewed only 'whether the agency's determination of good cause complies with the congressional intent' in § 553(d)." *Brewer*, 766 F.3d at 888 (quoting *United States v. Gavrilovic*, 551 F.2d 1099, 1105 (8th Cir. 1977)). Rather than focusing on a specific standard of review, most courts have interpreted § 553(b)(B)'s good cause provision under a limiting principle. *See Brewer*, 766, F.3d at 888 (citing *United States v. Reynolds*, 710 F.3d 498, 507 (3d Cir. 2013)). "This principle is most commonly formulated as a direction that good cause should be narrowly construed." *Reynolds*, 710 F.3d at 507 (citations and quotation marks omitted). Courts have also explained that "circumstances justifying reliance on the good cause exception are indeed rare and will be accepted only after the court has examined closely proffered rationales justifying the elimination of public procedures." *Id.* (internal quotation marks omitted). With these principles in mind, the Court looks to

whether the Commission has shown pre-adoption good cause for extending the Administrative Fines Program. The Commission may establish good cause by showing that notice and comment are "impracticable, unnecessary, or contrary to the public interest." 5 U.S.C. § 553(b)(B).

### A. Pre-adoption Notice and Comment Unnecessary

The Commission has shown that pre-adoption publication and notice and comment for the 2014 Regulatory Extension were unnecessary under these narrow circumstances. Notice and comment "are unnecessary when the amendments are minor or merely technical." *Hedge v. Lyng*, 689 F. Supp. 884, 892 (D. Minn. 1987) (citing S. Rep. No. 752, 79th Cong., 1st Sess. 14 (1945)); *see also North Carolina Growers Ass'n v. United Farm Workers*, 702 F.3d 755, 766 (4th Cir. 2010); *Util. Solid Waste Activities Grp. v. EPA*, 236 F.3d 749, 754 (D.C. Cir. 2001). "This prong of the good cause inquiry is confined to those situations in which the administrative rule is a routine determination, insignificant in nature and impact, and inconsequential to the industry and to the public." *Mack Trucks, Inc. v. E.P.A.*, 682 F.3d 87, 94 (D.C. Cir. 2012) (internal quotation marks and citations omitted); *see also* Senate Report, No. 752, 79th Cong. 1st Sess. (1945), reprinted in the Legislative History of the Act at 200. Courts have also held that notice and comment procedures also are unnecessary where Congress requires an agency to perform a nondiscretionary act. *See Metzenbaum v. FERC*, 675 F.2d 1282, 1291 (D.C. Cir. 1982) (internal citations and quotation marks omitted).

In this case, the Commission specifically explained, "notice and comment [we]re unnecessary here because this final rule merely extend[ed] the applicability of the

20

existing [Administrative Fines Program] and delete[ed] one administrative provision; the final rule ma[de] no substantive changes to the [Administrative Fines Program]." 2014 Extension of Administrative Fines Regulation, 79 Fed. Reg. at 3302. While on other occasions the Commission has made adjustments to the civil penalties that apply for violations of FECA's reporting requirements to account for inflation, the 2014 Regulatory Extension did not make any substantive changes. [2] The 2014 Regulatory Extension did not alter or even mention the civil penalty Plaintiffs challenge in this case. The changes made in the 2014 Regulatory Extension were mere technical changes and were not an exercise of substantive agency decision-making. No extent of notice or commentary could have altered the Commission's obligation to implement the 2013 Congressional Extension. Accordingly, pre-adoption publication and notice and comment were unnecessary under § 553(b)(B).

### B. Pre-Adoption Notice and Comment Contrary to Public Interest

The Commission has also shown that notice and comment in these narrow circumstances would be contrary to the public interest. "The public interest prong of the good cause exception is met only in the rare circumstance when ordinary procedures—generally presumed to serve the public interest—would in fact harm that interest." *Mack Trucks, Inc.*, 682 F.3d at 95. "[The public interest prong] is appropriately invoked when the timing and disclosure requirements of the usual procedures would defeat the

---

[2] The civil penalty formula for untimely 48-hour notices, originally established in May 2000, was adjusted in 2005, to its current amount. Plaintiffs do not challenge the June 2005 Inflation Adjustment. *Compare Extension of Administrative Fines Regulation,* 79 Fed. Reg. 31,787, 31,798 (setting civil penalty formula for 48-Hour Notices that are not timely filed as "$100 + (.10 x amount of the contribution(s) not timely reported")), *with* Inflation Adjustments for Civil Monetary Penalties, 70 Fed. Reg. 34633, 34636 (June 15, 2005) ("June 2005 Inflation Adjustment") (adjusting civil penalty formula for 48-Hour Notices that are not timely filed as "$110 + (.10 x amount of the contribution(s) not timely reported")).

purpose of the proposal—if, for example, 'announcement of a proposed rule would enable the sort of financial manipulation the rule sought to prevent.'" *Id.* (quoting *Util. Solid Waste Activities Grp. v. E.P.A.*, 236 F.3d 749, 755 (D.C. Cir. 2001)). "In such a circumstance, notice and comment could be dispensed with 'in order to prevent the amended rule from being evaded.'" *Id.* (quoting *Util. Solid Waste*, 236 F.3d at 755).

In this case, further delay in implementing the Congressionally approved extension would contravene the purposes of the Administrative Fines Program. The purpose of the Administrative Fines Program was "to create a special, streamlined set of procedures for efficiently imposing fines on covered persons for routine filing and record-keeping violations, such as the late filings at issue here." *Combat Veterans for Cong. Political Action Comm. v. Fed. Election Comm'n*, 795 F.3d 151, 154 (D.C. Cir. 2015) (citing § 30109(a)(4)(C)); *see also* 145 Cong. Rec. 16,260 (July 15, 1999) (statement of Rep. Maloney) (noting that the bill "contains several provisions that will help the agency operate more efficiently," by mandating some electronic filing and creating "a system of 'administrative fines'—much like traffic tickets, which will let the agency deal with minor violations of the law in an expeditious manner"). With the adoption of the Administrative Fines Program, "Congress sought to make it easier for the Commission to enforce [FECA's] deadlines." *Combat Veterans*, 795 F.3d at 154.

Further delay in implementation would contravene the purposes of the Administrative Fines Program, as extended by Congress in the 2013 Congressional Extension. This is shown, for example, by how the Commission was forced to treat violations that occurred between the time of the 2013 Congressional Extension and the time of the 2014 Regulatory Extension.  In the short gap between the end date of the

Commission's 2008 Extension of Administrative Fines Regulations and the effective date of the 2014 Extension of Administrative Fines Regulations, routine reporting violations were handled through the Commission's more extensive, regular enforcement procedures. 2014 Extension of Administrative Fines Regulations, 79 Fed. Reg. at 3302. Notice and comment procedures would have substantially lengthened the period of time during which the Commission was precluded from utilizing the more efficient Administrative Fines Program for routine reporting violations, such as the 48-hour notices at issue in this case, thus frustrating the Congressional purpose of the Administrative Fines Program and the 2013 Congressional Extension.   For these reasons, notice and comment were contrary to the public interest and the Commission has shown good cause under § 553(b)(B).

### ii. Post-adoption Good Cause Under § 553(d)

The Court also concludes that the Commission has established good cause under § 553(d). Good cause is more easily shown under § 553(d). *U.S. Steel Corp. v. U.S. E.P.A.*, 605 F.2d 283, 289 (7th Cir. 1979).   The statutory language of § 553(d) does not include the additional modifying language giving specific instances of good cause to § 553(b)(B). *See* § 553(b)(B) (stating where notice and comment are "impracticable, unnecessary, or contrary to the public interest."). "Furthermore, since [§ 553(d)(3)] only dispenses with prior notice and comment, and not notice and comment altogether, there is sound reason to believe that 'good cause' should encompass more situations in (d)(3) than in (b)(B)." *U.S. Steel Corp.*, 605 F.2d at 289.

For the reasons stated above, the Court concludes that the Commission has demonstrated good cause to dispense with the post-adoption notice requirement under

23

§ 553(d). The changes made to the regulations were minor and non-substantive and merely extended the Administrative Fines Program already in place. Further, additional delay would frustrate the purposes of the simplified administrative fines system. Accordingly, the Commission has shown good cause under § 553(d).

### c. Tally Vote Procedure

Plaintiffs also argue that the 2014 Regulatory Extension is invalid because it did not comply with the Commission's procedure and the Sunshine Act, 5 U.S.C. § 552b(g). Commission regulations promulgated pursuant to the Sunshine Act provide that "Commissioners shall not . . . dispose of Commission business other than in accordance with" Commission regulations. 11 C.F.R. § 2.3(a). Commission regulations further provide "the deliberation of at least four voting members of the Commission in collegia where such deliberations determine or result in . . . disposition of official Commission business" constitutes a "meeting" under the Sunshine Act. 11 C.F.R. § 2.2(d)(1). Commission regulations also state that, unless specifically excepted by regulation, "every portion of every Commission meeting shall be open to public observation." *See* 11 C.F.R. § 2.3(b). Commission regulations grant a narrow exception to the open meeting requirement when the Commission disposes of "routine matters." *See* 11 C.F.R. § 2.2(d)(2) ("The term meeting does not include the process of notation voting by circulated memorandum for the purpose of expediting consideration of routine matters"). Routine matters can be addressed by the Commission by using a formal "tally vote" procedure adopted by the Commission that involves written ballots marked by each of the commissioners and returned to the Commission Secretary and Clerk. *See Commc'ns Sys., Inc. v. FCC*, 595 F.2d 797, 800-01 (D.C. Cir. 1978) (explaining that agency

members may act on agency business using notation, or tally, procedure consistent with the Sunshine Act, 5 U.S.C. § 552b)).

The Complaint asserts the Commission violated the tally vote procedure and the Sunshine Act. Plaintiffs allege there was no record of a vote of commissioners or a meeting of the Commission. The Complaint also alleges that the Clerk dated an unsworn certification noting that the vote was decided on January 13, 2014, "[but] the Clerk did not execute either an affidavit or sworn declaration . . . [n]or did the Clerk provide a sworn Certification with a date stamp and official seal or represent the vote on this critical topic was face-to-face with each commissioner." ECF No. 1, Compl. ¶ 19, Page ID 8. Plaintiffs also argue that the Commission could have circulated an agenda item to have a public vote on establishing the penalties schedule one week before the Commission held a meeting on January 16, 2014, but failed to do so.  Plaintiffs allege that these, and other procedural failures, nullify the validity of the 2014 Regulatory Extension.

The Court has reviewed the record and Plaintiffs' arguments and finds no evidence that the Commission violated the tally vote procedure or the Sunshine Act that would invalidate the 2014 Regulatory Extension. Even if the Commission's voting procedures did not expressly follow the requirements of the Sunshine Act, the remedy for such violations is increased transparency, not invalidation of agency action. *See Braniff Master Exec. Council of Air Line Pilots Ass'n Int'l v. Civil Aeronautics Bd.*, 693 F.2d 220, 226 (D.C. Cir. 1982) ("[R]elease of transcripts, not invalidation of the agency's substantive action, is the remedy generally appropriate for disregard of the Sunshine Act.") (internal marks and citation omitted)*; Pan Am World Airways, Inc. v. Civil*

25

*Aeronautics Bd.*, 684 F.2d 31, 36 (D.C. Cir. 1982) (per curiam) ("Section 552b(h)(2), while it does not forbid us to vacate the [agency's] order, strongly indicates a congressional policy that release of transcripts, not invalidation of the agency's substantive action, shall be the normal remedy for Sunshine Act violations.").

Although an agency action may be set aside when it is intentional, prejudicial to the party making the claim, and "of a serious nature," *see Pan Am*, 684 F.2d at 36-37, Plaintiffs have not alleged any facts suggesting that the FEC's alleged Sunshine Act violations meet those criteria. *See also* S. Rep. No. 94-354, at 34 (1975) ("It is expected that a court will reverse an agency action solely on [the ground that it was taken at an improperly closed meeting] only in rare instances where the agency's violation is intentional and repeated, and the public interest clearly lies in reversing the agency action.").

## CONCLUSION

The Commission has demonstrated that the 2014 Regulatory Extension bypassed the APA's notice and comment procedures for good cause. Plaintiffs' allegations of procedural deficiencies, if found to be true, would not invalidate the 2014 Regulatory Extension.   Accordingly, Plaintiffs' claim for review of the Commission's actions will be dismissed.

IT IS ORDERED:

1.     The Motion to Dismiss filed by Defendants Federal Election Commission and Matthew S. Peterson, ECF No. 21, is granted;

2.     Plaintiffs' claims against Defendants Federal Election Commission and Matthew S. Peterson, are dismissed, with prejudice;

26

3.      Plaintiffs' Notice of Dismissal, ECF No. 28, is approved and Defendant

United States of America is dismissed as a party defendant;

4.      The Motion to Dismiss filed by Defendant United States of America, ECF

No. 25, is denied as moot;

5.      This Clerk of Court is directed to terminate this case for statistical

purposes; and

6.      A separate judgment will be entered.


Dated this 22nd day of December, 2016

                                                            BY THE COURT:

                                                            s/Laurie Smith Camp
                                                            Chief United States District Judge